POMERANTZ LLP
Brian Calandra
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
bcalandra@pomlaw.com

*Counsel for the CoreWeave Investor*
*Group and Proposed Co-Lead Counsel*
*for the Class*

[Additional counsel on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND MASAITIS, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>    v.<br><br>COREWEAVE, INC., MICHAEL INTRATOR, NITIN AGRAWAL, and BRANNIN MCBEE,<br><br>       Defendants. | Case No. 2:26-cv-00355-JKS-LDW<br><br>Hon. Jamel K. Semper<br><br>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF THE COREWEAVE INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL<br><br>Motion Date: April 6, 2026 |

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................................4

    I.       The CoreWeave Investor Group Is an Appropriate Group and Adequate Under Rule 23 ..........................................................................4

    II.     Mr. Fish's Conduct in this Litigation and History of Unrelated Misconduct Render Him Inadequate Under Rule 23 ...........................7

    III.    Dr. Price's Options Trading Makes Him Atypical Under Rule 23 and Subject to Unique Defenses.........................................................13

CONCLUSION.............................................................................................................15

CERTIFICATE OF SERVICE ...................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*,
   No. 2:17-CV-6454-KM-MAH, 2018 WL 1960444
   (D.N.J. Apr. 25, 2018) ................................................................................5, 7

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988)..........................................................................................15

*Broadfoot v. Barrick Gold Corp. et al.*,
   17 Civ. 3507 (NRB), 2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017)...................12

*Cook v. Allergn PLC*,
   No. 18-cv-12089, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ..................3, 13

*Goines v. Celsius Network, LLC*,
   No. 22-cv-04560 (KM) (ESK), 2023 WL 2945897
   (D.N.J. Apr. 14, 2023) .......................................................................................6

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
   No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513
   (E.D.N.Y. Dec. 15, 2017) ...................................................................................5

*In re Elan Corp. Sec. Litig.*,
   No. 08 Civ. 08761 (AHK), 2009 WL 132116
   (S.D.N.Y. May 11, 2009).....................................................................................13

*In re Enzymotec Ltd. Sec. Litig.*,
   No. CIV.A. 14-5556, 2015 WL 918535 (D.N.J. Mar. 3, 2015) ..................3, 4, 5

*In re Network Assocs. Secs. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999)..................................................................8

*Inchen Huang v. Depomed, Inc.*,
   289 F. Supp. 3d 1050 (N.D. Cal. 2017)................................................................7

*Jaramillo v. Dish Network Corp.*,
   No. 23-cv-00734-GPG-SKC, 2023 WL 5312062
   (D. Colo. Aug. 16, 2023) ...............................................................................3, 14

*Lawless v. Aurora Cannabis Inc.*,
No. CV-20-13819, 2021 WL 2850451 (D.N.J. July 8, 2021) ..........................2, 4

*Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee
Roasters, Inc.*,
No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012).........................5

*Newman v. Eagle Bldg. Techs.*,
209 F.R.D. 499 (S.D. Fla. 2002)...........................................................................8

*Rao v. Quorum Health Corp.*,
221 F. Supp. 3d 987 (M.D. Tenn. 2016) ............................................................12

*Schleicher v. Wendt*,
No. 1:02-cv-1332-DFH-TAB, 2009 WL 761157
(S.D. Ind. Mar. 20, 2009)......................................................................................8

*Shi v. SINA Corp.*,
No. 05 Civ. 2154 (NRB) *et al.*, 2005 WL 1561438
(S.D.N.Y. July 1, 2005) .........................................................................................8

*Sneed v. AcelRx Pharms., Inc.*,
No. 21-cv-04353, 2021 WL 5964596 (N.D. Cal. Dec. 16, 2021) ..............2, 8, 12

*Teroganesian v. Southwest Airlines Co.*,
No. 4:23-cv-00115, 2023 WL 4565464 (S.D. Tex. July 15, 2023)................3, 13

*Villare v. Abiomed, Inc.*,
No. 19 Civ. 7319 (ER) *et al.*, 2020 WL 3497285
(S.D.N.Y. June 29, 2020)........................................................................................8

**Statutes**

15 U.S.C. § 78u-4..................................................................................................1, 12

Private Securities Litigation Reform Act of 1995 ...........................................*passim*

**Rules**

Fed. R. Civ. P. 23 .............................................................................................*passim*

iii

Movant the CoreWeave Investor Group[1] respectfully submits this Reply Memorandum of Law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz and BG&G as Co-Lead Counsel (Dkt. No. 22).[2]

As discussed at length in its moving and opposition briefs (Dkt. Nos. 22-2, 35), the CoreWeave Investor Group is the presumptive "most adequate plaintiff" under the PSLRA because (1) it has alleged the largest financial interest in this Action among eligible lead plaintiff candidates, having incurred losses of approximately *$1.09 million* in connection with its Class Period transactions in CoreWeave securities (*see* Dkt. No. No. 22-3 at *6), and (2) it strongly satisfies Rule 23's typicality and adequacy requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Two competing movants – Mr. Fish and Dr. Price – contest the CoreWeave Investor Group's appointment as Lead Plaintiff. Mr. Fish claims to be the presumptive "most adequate plaintiff" by virtue of claiming the largest financial

---

[1] All capitalized terms herein are defined in the CoreWeave Investor Group's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 22-2, 35.

[2] On the statutory motion deadline, six other movants filed competing motions for appointment as Lead Plaintiff: (1) Yuri Odarchuk and Robert Ormsby (Dkt. No. 17); (2) Smith Idikuda (Dkt. No. 19); (3) Gregory and Katherine Pickeral (Dkt. No. 6); (4) John Kim and David Lai (Dkt. No. 21); (5) Carlos Villalobos (Dkt. No. 10); and (6) Kok Ying Kei (Dkt. No. 15). Each of the foregoing movants subsequently filed notices stating their non-opposition to the competing motions, acknowledging that they did not appear to meet the PSLRA's "most adequate plaintiff" criteria, or withdrawing their motion *See* Dkt. Nos. 25, 27, 29-30, 31, 33.

1

interest among the competing movants. *See* Dkt. No. 32 at 2-3. However, as set forth at length in both the CoreWeave Investor Group's opposition brief (*see* Dkt. No. 35 at 5-6, 17-24) *and* Dr. Price's opposition brief (*see* Dkt. No. 34 at 2-3, 6-17), Mr. Fish's conduct in this litigation and other PSLRA actions, *and* his undisclosed history of misconduct unrelated to this litigation, render him inadequate under Rule 23 – thereby mandating denial of his motion irrespective of the quantum of his financial interest. *See*, *e.g.*, *Sneed v. AcelRx Pharms., Inc.*, No. 21-cv-04353, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021) (denying lead plaintiff motion due to movant's undisclosed embezzlement conviction, emphasizing "serious concerns about [the movant's] candor to his attorney and [the court] regarding his misconduct").

Dr. Price, for his part, argues that the CoreWeave Investor Group is an improper investor group, and thus inadequate under Rule 23. Yet courts in the Third Circuit and this District routinely appoint similarly constituted groups to serve as Lead Plaintiffs in PSLRA actions. *See*, *e.g.*, *Lawless v. Aurora Cannabis Inc.*, No. CV-20-13819 (RMB/SAK), 2021 WL 2850451, at *5 (D.N.J. July 8, 2021) (appointing "relatively small group of three individual investors" as lead plaintiff, "not[ing] that the appointment of a small group of individuals as lead plaintiff has certain advantages over the appointment of a single individual, including avoiding the re-determination of lead plaintiff if an individual lead plaintiff is unable to serve

or is deemed inadequate after appointment"); *In re Enzymotec Ltd. Sec. Litig.*, No. CIV.A. 14-5556, 2015 WL 918535, at *4 (D.N.J. Mar. 3, 2015) (appointing as lead plaintiff a group of three investors).

Moreover, Dr. Price himself is in any event disqualified from consideration because he incurred all of his Class Period investment losses in connection with transactions in CoreWeave option contracts, purchasing exactly *zero* shares of CoreWeave common stock on the open market. Moreover, the overwhelming majority of his options trading reflected an expectation that CoreWeave's share price would not increase in value. These facts fact makes him highly atypical of the Class he seeks to represent in this Action, as well as subject to disqualifying unique defenses. *See*, *e.g.*, *Cook v. Allergn PLC*, No. 18-cv-12089, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019); *Teroganesian v. Southwest Airlines Co.*, No. 4:23-cv-00115, 2023 WL 4565464, at *5 (S.D. Tex. July 15, 2023); *Jaramillo v. Dish Network Corp.*, No. 23-cv-00734-GPG-SKC, 2023 WL 5312062, at *5 (D. Colo. Aug. 16, 2023).

For the reasons set forth herein, the CoreWeave Investor Group thus respectfully submits that the Court should grant its motion in its entirety and deny the competing motions.

3

## ARGUMENT

**I.      The CoreWeave Investor Group Is an Appropriate Group and Adequate Under Rule 23**

Only one of the two competing movants, Dr. Price, contests the CoreWeave Investor Group's adequacy.   Specifically, Dr. Price claims that the group is inadequate under Rule 23, citing primarily the fact that the members of the group did not know one another prior to this litigation and mischaracterizing the group as being "cobbled together for the sole purposes of aggregating losses[.]"  Dkt. No. 34 at 17.

Dr. Price's focus on absence of a pre-litigation relationship is misplaced, as there is no such requirement in either the text of the PSLRA or federal securities jurisprudence.   Courts, including those in the Third Circuit and District of New Jersey, routinely appoint groups of previously unrelated investors to leadership roles in PSLRA actions.  *See*, *e.g.*, *Aurora Cannabis*, 2021 WL 2850451, at *5 (appointing "relatively small group of three individual investors" without a pre-litigation relationship as lead plaintiff, "not[ing] that the appointment of a small group of individuals as lead plaintiff has certain advantages over the appointment of a single individual, including avoiding the re-determination of lead plaintiff if an individual lead plaintiff is unable to serve or is deemed inadequate after appointment"); *Enzymotec*, 2015 WL 918535, at *4 (same, "not[ing] that the Third Circuit has held

4

in no uncertain terms that there is nothing in the PSLRA preventing even a group of *unrelated persons* from serving as lead plaintiff") (emphasis in original).

Further, contrary to Dr. Price's claims, courts routinely do consider precisely the type of Joint Declaration that the CoreWeave Investor Group has submitted here (*see generally* Dkt. No. 22-3 at \*35-\*42) as evidence of Rule 23 adequacy, as such Joint Declarations demonstrate the group members' cohesiveness and readiness to work collaboratively. *See*, *e.g.*, *Aguilar v. Vitamin Shoppe, Inc.*, No. 2:17-CV-6454-KM-MAH, 2018 WL 1960444, at \*9-11 (D.N.J. Apr. 25, 2018) (finding adequacy of group of three investors supported by, *inter alia*, their limited size and their submission of a joint declaration, and collecting cases in the Third Circuit and throughout the country that found similar declarations support a group's appointment as lead plaintiff); *Enzymotec*, 2015 WL 918535, at \*4 (appointing investor group as lead plaintiff under the PSLRA because of, *inter alia*, "the representations made in [the group]'s joint declaration . . . and [its] selection of experienced and learned counsel"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at \*4 (E.D.N.Y. Dec. 15, 2017) (appointing group of four unrelated investors that submitted a declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding the group is not "so large as to be unwieldly and impracticable"); *Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL

5

12985571, at *3 (D. Vt. Apr. 27, 2012) (finding joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

Dr. Price's assertion that the CoreWeave Investor Group was formed purely to aggregate its members' losses is at odds with the record. In their Joint Declaration, the CoreWeave Investor Group's members expressly attested to their reasons for opting to work together in this litigation:

> We each determined that we could ***maximize the Class's recovery by pooling our respective resources and experience*** by jointly seeking appointment as Co-Lead Plaintiffs. After reviewing the allegations pleaded in the complaint, and consulting with our counsel, we each independently determined to seek joint appointment as Co-Lead Plaintiffs and subsequently approved the filing of a joint motion seeking our appointment as Co-Lead Plaintiffs. We agree that ***our collective resources and experience, as well as our ability to engage in joint decision-making, will materially benefit and advance the interests of the Class*** in this case.

*See* Dkt. No. 22-3 at *38 ¶ 10. Dr. Price has not even attempted to explain why the Court should disregard these sworn attestations. Moreover, contrary to Dr. Price's assertion, all three members of the CoreWeave Investor Group have indeed participated in a conference call in which they discussed this litigation with one another.

In the alternative, if the Court is disinclined to appoint a group of investors as Lead Plaintiff, then it should consider each member of the CoreWeave Investor Group individually. *See, e.g., Goines v. Celsius Network, LLC*, No. 22-cv-04560 (KM) (ESK), 2023 WL 2945897, at *4 (D.N.J. Apr. 14, 2023) ("If the [movant

6

group's] claimed amounts are aggregated—and indeed, even if not—its members clearly have the largest financial interest."); *Aguilar*, 2018 WL 1960444, at *11 ("[E]ven if the [movant group] were not considered as a group, [individual member's] financial loss, standing alone, is greater than [competing movant's] loss."); *Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1053-54 (N.D. Cal. 2017) (collecting cases, rejecting criticism that "there is no evidence the group members have spoken", and appointing group because "even if the group is disaggregated, one of its members—[movant]—still has the highest loss").  Here, two group members – Mr. Oros, with losses of $547,163, and Mr. Xie, with losses of $316,992 – both incurred larger losses than any other eligible Lead Plaintiff applicant considered individually (including those who have abandoned their motions).  Although Dr. Price claims to have incurred larger losses, his overwhelmingly bearish options trading disqualifies him from consideration irrespective of his claimed financial interest.

In sum, the Court should not credit Dr. Price's opposition arguments, which lack any legal or factual basis.

## II. Mr. Fish's Conduct in this Litigation and History of Unrelated Misconduct Render Him Inadequate Under Rule 23

Although Mr. Fish claims the largest financial interest among the three competing Lead Plaintiff movants, he is ineligible for appointment as Lead Plaintiff because his conduct in this and previous PSLRA actions, as well as his prior

misconduct unrelated to securities litigation, demonstrate his inadequacy under Rule 23. *See, e.g.*, *AcelRx*, 2021 WL 5964596, at *4 (denying motion by movant who committed "serious financial crimes involving misappropriation of funds to which [movant] was entrusted"); *In re Network Assocs. Secs. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (finding lead plaintiff movant inadequate due to unrelated fraud investigation); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504-05 (S.D. Fla. 2002) (lead plaintiff movant inadequate where concerns existed with respect to his ability to serve as a fiduciary due to unrelated prior conduct); *Villare v. Abiomed, Inc.*, No. 19 Civ. 7319 (ER) *et al.*, 2020 WL 3497285, at *7 (S.D.N.Y. June 29, 2020) (denying motion by movant with prior fraud conviction, finding that "a criminal fraud conviction ten years ago remains extremely concerning for an individual seeking to serve as a fiduciary for absent class members asserting they are the victims of a fraudulent scheme"); *Schleicher v. Wendt*, No. 1:02-cv-1332-DFH-TAB, 2009 WL 761157, at *3 (S.D. Ind. Mar. 20, 2009) (finding proposed class representative inadequate due to a past criminal conviction for insurance fraud); *Shi v. SINA Corp.*, No. 05 Civ. 2154 (NRB) *et al.*, 2005 WL 1561438, at *4-5 (S.D.N.Y. July 1, 2005) (finding "[h]onesty and trustworthiness [to be] relevant factors in determining an individual's ability to serve as a class representative" and denying motion by movant group of which one member had a criminal conviction for "providing false information to a financial institution.").

Here, as discussed at length in the CoreWeave Investor Group's opposition brief, Mr. Fish's filings in this litigation to date have been duplicative and contradictory. Two different firms (L&K and KTMC) filed lead plaintiff motions on Mr. Fish's behalf, each representing that Mr. Fish selected it as his proposed Lead Counsel in this Action. *See generally* Dkt. Nos. 14, 16. Significant differences between the two sets of motion papers, however, suggested that Mr. Fish failed to review one or both of these submissions carefully. KTMC subsequently withdrew its motion papers, without explaining why the duplicative filing occurred. *See* Dkt. No. 23.

In his opposition papers, however, Mr. Fish belatedly offered an explanation – namely, that he initially authorized L&K to file a motion on his behalf but subsequently came to believe that L&K would not, in fact, file his motion:

> On March 11, 2026, just prior to the motion deadline, I attempted to text message my attorney at Levi & Korsinsky . . . to confirm everything was in place for the upcoming motion filing. Unfortunately, I inadvertently sent the text message to [the attorney's] office line and not his cell phone, meaning the text message was never received. I did not know this at the time.
>
> . . . Having not received a response from [L&K] and with the deadline for lead plaintiff motions drawing closer, I reached out to another firm, Kessler Topaz Meltzer & Check, LLP, to discuss filing a lead plaintiff motion.

Dkt. No. 32-1.

9

Respectfully, the foregoing explanation is not reassuring. As Mr. Fish tells it, a single unanswered (and unanswerable) text message to a single attorney at L&K was enough to convince him that the firm had abandoned its representation of him in this litigation. Remarkably, Mr. Fish does not describe any further efforts to contact L&K. He might have called the same telephone number to which he attempted to send a text message, which presumably would have resulted in his speaking to an attorney, but he did not. He might also have emailed one or more L&K attorneys, but he did not. Rather, he leapt to an erroneous conclusion that could easily have been avoided by picking up a telephone, as a consequence of which he unnecessarily authorized a second firm to file a motion on his behalf, thereby needlessly introducing confusion and inefficiency into these proceedings. Furthermore, in light of Mr. Fish's history, the CoreWeave Investor Group most respectfully submits that his explanation is somewhat difficult to credit, and the possibility remains that Mr. Fish's filing of duplicative motion practice was, in fact, some attempt at gamesmanship.

In sum, Mr. Fish's communications with counsel were so disjointed that it was unclear at the outset – not only to the Court and other litigants, but even briefly to Mr. Fish himself – as to who even represented him in this Action. This litigation is at its very earliest stages and will only grow more complex. Most respectfully, the difficulties that Mr. Fish has already demonstrated with respect to coordinating

10

what ought to be basic processes should not give the Court any confidence that he is prepared to effectively and efficiently prosecute the claims of absent Class members in this litigation.

Even more concerning is Mr. Fish's extensive history of conduct that directly implicates his honesty and trustworthiness, rendering him unfit to serve as a fiduciary to the Class in this litigation. As discussed at length in the CoreWeave Investor Group's opposition brief, an investigation by the group's counsel has revealed that Mr. Fish previously pled guilty to petit larceny and possession of a forged instrument. *See* Dkt. No. 35-1 at *24-*26. Dr. Price's opposition brief also describes the troubling results of a similar investigation by his own counsel:

> It appears Mr. Fish was recently forced to resign from his position as an onsite property manager for Maxwell-Kates, Inc. ("Maxwell-Kates") in connection with an investigation revealing not only that Maxwell-Kates mismanaged one of its properties, but also that Mr. Fish appears to have misspent thousands of dollars of the property's funds on personal Amazon purchases. In the wake of this scandal, Maxwell-Kates recently initiated a lawsuit against its now former employee Mr. Fish asserting claims including fraud/fraudulent misrepresentation, employee dishonesty, equitable action for an accounting, and conversion all "arising from [Mr. Fish]'s unauthorized use of a company credit card for personal expenses totaling approximately $22,000.00." Enrooted in this pending litigation against Mr. Fish are the same characteristics of alleged misconduct, lack of trustworthiness, and fraud that are present in securities fraud class actions, and which have led courts to disqualify proposed lead plaintiffs.

*See* Dkt. No. 34 at 2-3 (internal citations omitted).

11

More troubling still, ***Mr. Fish chose not to disclose any of this to the Court***, despite its obvious relevance to assessing his Rule 23 adequacy and fitness to serve as a fiduciary generally. *See*, *e.g.*, *AcelRx*, 2021 WL 5964596, at \*4 (rejecting a lead plaintiff movant for the additional reason that he "did not disclose . . . in his own motion" a prior conviction for embezzlement). Indeed, but for the separate investigations conducted by the competing movants' counsel, the Court would presumably remain wholly unaware of Mr. Fish's troubling past.

At minimum, Mr. Fish's checkered past and lack of candor "demonstrates a reasonable basis for a finding that [he] is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). *See also Broadfoot v. Barrick Gold Corp. et al.*, 17 Civ. 3507 (NRB), 2017 WL 3738444, at \*1 (S.D.N.Y. Aug. 9, 2017) (granting limited discovery where "there exists a potential that [a movant] is in a unique position that would defeat typicality and adequacy"); *Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 990 (M.D. Tenn. 2016) (same). As such, the CoreWeave Investor Group respectfully reiterates its request for discovery into, *inter alia*, (i) the circumstances surrounding the filing of dual motions on Mr. Fish's behalf, including any retainer agreements with the two firms at issue, and (ii) any criminal conduct by Mr. Fish. Given the additional facts adduced by Dr. Price's counsel, the CoreWeave Investor Group also requests discovery into any other (*i.e.*, not necessarily criminal) conduct by Mr. Fish implicating his honesty or trustworthiness.

12

**III.    Dr. Price's Options Trading Makes Him Atypical Under Rule 23 and Subject to Unique Defenses**

Finally, irrespective of his financial interest in this Action – which is smaller than that of the CoreWeave Investor Group – Dr. Price does not meet the PSLRA's criteria for appointment as Lead Plaintiff because, having incurred all of his Class Period investment losses in connection with trading in option contracts, he is atypical under Rule 23 as well as subject to disqualifying unique defenses.  Courts generally decline to appoint such investors to serve as lead plaintiffs in PSLRA actions.  *See, e.g.*, *Allergn*, 2019 WL 1510894, at \*2 (investor who incurred most of his losses from options trading  was "not, in the opinion of this court, an investor whose claims will turn out to be typical of the average common stockholder" and "very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates[.]") (quoting *In re Elan Corp. Sec. Litig.*, No. 08 Civ. 08761 (AHK), 2009 WL 132116, at \*2 (S.D.N.Y. May 11, 2009)); *Southwest Airlines*, 2023 WL 4565464, at \*5 (same).

Here, not only was Dr. Price trading in option contracts exclusively, but the overwhelming majority of his trading activity was consistent with a negative investment thesis about CoreWeave and its business prospects – that is, Dr. Price appears to have traded option contracts in the expectation that CoreWeave's stock price would ***not*** increase in value.  Specifically, Dr. Price purchased or sold 83 option contracts during the Class Period, 59 of which were call-option contracts that

13

obligated Dr. Price to sell CoreWeave shares to his contractual counterparty at significantly lower-than-market prices in the event that the Company's stock price increased – that is, in each of these 59 instances, Dr. Price was betting that CoreWeave's stock price would *not* go up.  Moreover, because Dr. Price did not actually own any shares of CoreWeave stock at the time he was entering into these option contracts, he would have had to purchase shares at market prices and then immediately sell them to his contractual counterparty at below-market prices, potentially incurring massive losses, in order to cover his position (*i.e.*, to meet his obligations under the option contract).  And while Dr. Price did acquire a certain number of CoreWeave common shares during the Class Period, he only did so because he became obligated to purchase those shares from counterparties to his option contracts when the share price of Coreweave exceeded the option strike price – that is, none of the purchases represented a voluntary trading decision by Dr. Price. *See Dish Network*, 2023 WL 5312062, at *5 (emphasizing that investors "who only acquire common stock involuntarily when put options they have written are exercised [] are simply differently situated from parties who engage in—and whose losses predominantly derive from—ordinary common-stock transactions.").This trading activity plainly differentiates Dr. Price from a typical Class member, who would have simply purchased the Company's shares on the open market in the good-faith belief that their price would go up.  Here, Price purchased his shares only

14

because their value increased beyond his expectations. Moreover, it calls into question whether Dr. Price even relied on the Defendants' alleged false and misleading statements when he made his investment decisions – indeed, in most instances he was betting that the Company's rosy forecasts would not materialize, thereby giving Defendants an opportunity to rebut the presumption of reliance first established in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price, as opposed to an investment thesis that the Company's share price will not increase, as evidenced by Dr. Price's option trading. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247. At the very least, then, as Lead Plaintiff, Dr. Price would foreseeably be forced to spend his time litigating issues unique to his own trading activity and irrelevant to the fraud claims of absent Class members.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in its motion and opposition briefs (Dkt. Nos. 22-2, 35), the CoreWeave Investor Group respectfully requests that the Court issue an Order: (1) appointing the CoreWeave Investor Group as Lead Plaintiff for the Class; and (2) approving its selection of Pomerantz and BG&G as Co-Lead Counsel for the Class.

15

Dated: March 30, 2026

Respectfully submitted,

POMERANTZ LLP

/s/ Brian Calandra

Brian Calandra
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
bcalandra@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for the CoreWeave Investor Group
and Proposed Co-Lead Counsel for the
Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2026, I served a copy of the

foregoing document through the CM/ECF system upon all counsel of record.

/s/ Brian Calandra
Brian Calandra

17