**KAHN SWICK & FOTI, LLC**
Kim E. Miller (*PHV to be submitted*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730

**ROBINSON MILLER LLC**
Michael J. Gesualdo
Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
Telephone: (973) 690-5400

*Counsel for Lead Plaintiff Movant*
*Richard A. Price, M.D. and Proposed*
*Lead Counsel for the Class*

*Local Counsel for Lead Plaintiff*
*Movant Richard A. Price, M.D.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND MASAITIS, Individually and on Behalf of Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>COREWEAVE, INC., MICHAEL INTRATOR, NITIN AGRAWAL, and BRANNIN MCBEE,<br><br>    Defendants. | No. 2:26-cv-00355-JKS-LDW<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF RICHARD A. PRICE, M.D.'s MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>**MOTION DATE: April 6, 2026** |

# TABLE OF CONTENTS

**Page:**

I.    INTRODUCTION.................................................................................................1

II.    ARGUMENT....................................................................................................2

    A.  Dr. Price Is Adequate and Typical..................................................................2

    B.  Mr. Fish Is Inadequate .................................................................................9

    C.  The Oros/Xie/Sytina Group is Inadequate ....................................................12

III.   CONCLUSION................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*,
No. 2:17-cv-6454, 2018 WL 1960444 (D.N.J. Apr. 25, 2018) ...............................12

*Barnet v. Elan Corp., PLC.*,
236 F.R.D. 158 (S.D.N.Y. 2005) ......................................................................13

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ............................................................................................8

*Chauhan v. Intercept Pharms.*,
No. 21-cv-00036, 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ...........................7

*Chao Sun v. Han,*
No. 15-cv-0703, 2015 WL 2364937 (D.N.J. May 14, 2015)..............................14

*Cook v. Allergan PLC*,
No. 18-cv-12089, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019).........................8

*Cullinan v. Cemtrex*,
287 F. Supp. 3d 277 (E.D.N.Y. 2018)...............................................................11

*David v. Brit. Am. Tobacco P.L.C*,
No. 24-cv-517, 2024 WL 4351311 (E.D.N.Y. Sept. 30, 2024) ..........................11

*DeLuca v. Instadose Pharma Corp.*,
No. 2:21-cv-675, 2022 WL 3020417 (E.D. Va. July 29, 2022)..........................13

*Deutschman v. Beneficial Corp.*,
841 F.2d 502 (3d Cir. 1988) ..............................................................................3

*Dura Pharms. v. Broudo*,
544 U.S. 336 (2005) ............................................................................................9

*Garbowski v. Tokai Pharms., Inc.*,
302 F. Supp. 3d 441 (D. Mass. 2018)................................................................11

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011)..................................................................8

*Gurevitch v. KeyCorp*,
No. 23-cv-01520, 2023 WL 8890938 (N.D. Ohio Dec. 26, 2023) ......................10

*In re Altisource Portfolio Solutions, S.A. Sec. Litig.*,
No. 14-cv-81156 (S.D. Fla. Nov. 14, 2014) .......................................................11

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-cv-4846, 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) .........................13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................................................... 12, 13, 15

*In re Enzymotec Ltd. Sec. Litig.*,
No. 14-cv-5556, 2015 WL 918535 (D.N.J. Mar. 3, 2015)..................................14

*In re FleetBoston Fin. Corp. Sec. Litig.*,
253 F.R.D. 315 (D.N.J. 2008) ............................................................................10

*In re Longfin Corp. Sec. Litig.*,
No. 1:18-cv-02933 (S.D.N.Y.) ............................................................................10

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021)..................................................................................13

*In re Priceline.com Inc.*,
236 F.R.D. 89 (D. Conn. 2006) .................................................................... 4, 5, 8

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
571 F. Supp. 2d 1315 (N.D. Ga. 2007) ................................................................8

*In re Vesta Ins. Grp., Inc., Sec. Litig.*,
No. 98-ar-1407, 1999 WL 34831475 (N.D. Ala. Oct. 25, 1999),........................8

*In re Vesta Ins. Grp., Inc., Sec. Litig.*,
No. 98-ar-1407, 2008 WL 11381802 (N.D. Ala. July 22, 2008).........................8

*Isaacs v. Musk*,
No. 18-cv-04865, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ........................9

*Khunt v. Alibaba Group Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................11

iii

*J/H Real Est. Inc. v. Abramson*,
  No. 95-cv-4176, 1996 WL 63712 (E.D. Pa. Feb. 9, 1996)....................................7

*Larmay v. AMMO Inc.*,
  No. 24-cv-02619 (D. Ariz.) .................................................................................7

*Larmay v. AMMO Inc.*,
  No. 24-cv-02619, 2025 WL 2548618 (D. Ariz. May 8, 2025) .........................2, 7

*Larmay v. AMMO Inc.*,
  No. 24-cv-02619, 2025 WL 2399292 (D. Ariz. Aug. 19, 2025).......................2, 7

*Lawless v. Aurora Cannabis Inc.*,
  No. 20-cv-13819 2021 WL 2850451 (D.N.J. July 8, 2021).......................... 13, 14

*Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
  No. 2:11-cv-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) .............................13

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
  63 F. Supp. 3d 394 (D. Del. 2014)  ....................................................................13

*Olsen v. Red Cat Holdings, Inc.*,
  No. 2:25-cv-05427 (D.N.J.)...................................................................................9

*Peters v. Jinkosolar Holding Co.*,
  No. 11-cv-7133, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ...........................13

*Reitan v. China Mobile Games & Ent. Grp., Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014)...................................................................11

*Sabbagh v. Cell Therapeutics, Inc.*,
  C10-414, 2010 WL 3064427 (W.D. Wash. Aug. 2, 2010) ..................................13

*Sagall v. Savient Pharms., Inc.*,
  No. 08-cv-10262, 2009 WL 10868742 (S.D.N.Y. Mar. 12, 2009).......................7

*Salem v. Methode Elecs., Inc.*,
  No. 24-cv-7696, 2025 WL 368955 (N.D. Ill. Feb. 3, 2025) ...............................10

*Subramanian v. Watford*,
   No. 20-cv-02652 (D. Colo.) ...............................................................................11

*Takata v. Riot Blockchain, Inc.*,
   No. 18-cv-2293, 2018 WL 5801379 (D.N.J. Nov. 6, 2018) ......................... 14, 15

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. 2019).................................................................15

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. 07-cv-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................................12

**Statutes**

Securities Exchange Act of 1934 ...............................................................................3

15 U.S.C. § 78c(a)...................................................................................................3, 5

**Rules**

Fed. R. Civ. P. 23 .....................................................................................................1

**Books**

LAWRENCE G. MCMILLAN,
   OPTIONS AS A STRATEGIC INVESTMENT (4th ed. 2002).................................. 3, 4, 5

v

## I.      INTRODUCTION

Dr. Price is the most adequate plaintiff who otherwise satisfies the requirements of Rule 23, as any arguable presumptions in favor of Mr. Fish or the Oros/Xie/Sytina Group (the "Group") have been rebutted. With respect to Mr. Fish, competing movants submitted proof that he pled guilty to petit larceny and the possession of a forged instrument in 2016 and 2018, respectively, and just some 9 months ago, was sued by his former employer for apparently misappropriating thousands of dollars from a Bronx co-op for the elderly. When considered in conjunction with his submission of two conflicting motions for appointment and the litany of errors in his certifications and declarations, there can be little doubt that Mr. Fish would not be an adequate steward of the putative Class. With respect to the Group, it is just the type of cobbled-together, lawyer-driven artifice the Third Circuit has cautioned against appointing as a lead plaintiff. To say nothing of the fact that the Group's members are strewn across the country and appear not to have even spoken with one another prior to filing their motion, Dr. Price sustained substantially greater losses than *any* individual member of the Group.

Finally, while both Mr. Fish and the Group argue Dr. Price is inadequate because he transacted in both CoreWeave stock and options during the Class Period, they are incorrect. Dr. Price, like many other members of the putative Class, acquired CoreWeave stock during the Class Period pursuant to assigned puts and

1

subsequently sold covered calls against his long position. Courts have consistently held this exact bullish investment strategy poses no impediments to adequacy or typicality. Competing movants' arguments to the contrary are inconsistent with both prevailing law and the definition of the Class itself.

As his loss chart demonstrates, the vast majority of Dr. Price's **$(895,936.71)** loss is attributable to his investment in CoreWeave *stock*—some **25,247** shares of which he retained through the end of the Class Period. This fact fatally undermines the Group's baseless assertion that Dr. Price's Class Period transactions "reflected a negative investment thesis with respect to CoreWeave…." ECF No. 35 at 7. In so arguing, the Group disingenuously conflates selling uncovered calls with selling *covered* calls and directly contradicts arguments its counsel recently (and successfully) advanced in *Larmay v. AMMO Inc.*, No. 24-cv-02619, 2025 WL 2548618, at *4 (D. Ariz. May 8, 2025), *R. & R. adopted*, No. 24-cv-02619, 2025 WL 2399292 (D. Ariz. Aug. 19, 2025).

## II.    ARGUMENT

### A.    Dr. Price Is Adequate and Typical

While the Group attempts to paint a portrait of Dr. Price as an inadequate, atypical investor with a "negative investment thesis" on CoreWeave (ECF No. 35 at 7), this could not be further from the truth—as should be obvious from his $(895,936.71) **loss**, which is almost entirely attributable to stock. Central to the Group's argument is its superficial observation that Dr. Price sold calls during the

Class Period. *Id.* at 25-30. But Dr. Price only ever sold *covered* calls against his *long* position(s) in CoreWeave stock. *See* ECF No. 11-3 (Dr. Price Certification, Schedule A). As its own counsel has successfully argued in at least two other cases, this investment strategy does *not* undermine Dr. Price's adequacy or typicality.

This Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act of 1934 (the "Exchange Act") against Defendants "on behalf of a Class [] consisting of all those who purchased ***or otherwise acquired*** CoreWeave ***securities*** during the Class Period…." ¶ 84 (emphasis added). Putting aside the vast quantities of stock Dr. Price purchased during the Class Period, the put and call options Dr. Price purchased and sold during the Class Period are indisputably "securities," as "[t]he term "security" means…any put, call, straddle, option, or privilege on any security…." 15 U.S.C. § 78c(a)(10); *see also Deutschman v. Beneficial Corp.*, 841 F.2d 502, 508 (3d Cir. 1988) (confirming options purchasers have standing to pursue Section 10(b) claims). "A call option gives the owner (or holder) the right to buy the underlying security, while a put option gives the holder the right to sell the underlying security. The price at which the stock may be bought or sold is the exercise [or strike] price….A stock option affords this right to buy or sell for only a limited period of time; thus, each option has an expiration date." LAWRENCE G. MCMILLAN, OPTIONS AS A STRATEGIC INVESTMENT 3-4 (4th ed. 2002).

Dr. Price first began investing in CoreWeave securities when, on June 5, 2025,

3

he sold-to-open a put contract with a strike price of $133 and an expiration date of June 15. *See* ECF No. 11-3 at p. 2. "[T]he seller of a put will make money if the underlying stock increases in price. The uncovered sale of a put is a more common strategy … and … is a bullishly-oriented strategy." MCMILLAN, *supra*, at 292. Thus, on June 5, when the price of CoreWeave stock opened at $156/share, Dr. Price wrote a put contract with an investment thesis that CoreWeave's share price would not fall to $133 by June 15. *See* Second Suppl. Gesualdo Decl., submitted herewith, at Ex. A, p. 2 (CoreWeave Historical Price Run). He was right, and the put expired worthless on June 15. Dr. Price continued to write puts which either expired or which he bought-to-close at a minimal cost until, on July 11, 2025: (1) CoreWeave's stock price finally fell below the strike prices of his puts; (2) the put purchasers exercised their options; and (3) he was assigned the corresponding shares. *See* ECF No. 11-3 at p. 1-3 (taking delivery on July 14 of 1,700 shares in Account #2 and 7,500 shares in Account #4 from assigned July 11 puts).

Dr. Price implemented the same bullish strategy in each of his five accounts— he initiated a long position by selling puts and eventually taking delivery of CoreWeave stock.[1] By no means is such an approach "unorthodox," as the Group claims. ECF No. 35 at 28. In fact, the court in *In re Priceline.com Inc.*, 236 F.R.D.

---

[1] *See* ECF No. 11-3 at pp. 1, 2, 5 (first transaction in each account is a sell-to-open put).

4

89 (D. Conn. 2006), explained this exact strategy in rejecting defendants' challenges to a proposed class representative's adequacy and typicality.

> By writing put options, Weiss expected to profit in either of two ways: (1) if the holder did not exercise the put option, by retaining the premium paid to him for the put option; or (2) if the holder exercised the put options and the shares were put to him, by acquiring Priceline shares at a price he deemed reasonable, which would be the strike price less the premium paid to him for the put option . . ..[E]ven if the market price dipped below the strike price on a put option he wrote, if Weiss believed that the effective purchase price of the shares (strike price minus premium) was reasonable and that the market price would eventually rise, writing a put option would be a win-win scenario for him.

*Id.* at 99. Dr. Price's acquisition of CoreWeave stock via puts was unremarkable and constituted "purchases" of "securities" within the meaning of both the defined Class and 15 U.S.C. § 78c(a)(10) and (13).

Critically, only *after* Dr. Price was long in CoreWeave stock did he begin writing **covered** calls against those shares. In contrast to uncovered calls, "[c]overed call writing is the name given to the strategy by which one sells a call option while simultaneously owning the obligated number of shares of underlying stock. The writer should be mildly bullish, or at least neutral, toward the underlying stock." MCMILLAN, *supra*, at 39. This is exactly what Dr. Price did. In his Account #1, for example, after Dr. Price was assigned 3,500 shares on August 15 at a cost basis of $125/share (pursuant to the corresponding put he wrote on August 13), sold covered calls against those shares for modest premiums (effectively reducing his cost basis),

5

and held those same 3,500 shares through the end of the Class Period. *See* ECF No. 11-3 at p. 1. After the $89,495 in premiums Dr. Price received from writing those covered calls is properly netted against the retained value loss of $(136,972.50) he sustained on the 3,500 shares, his asserted loss in Account #1 is $(47,477.50). *See* ECF No. 11-4 at p. 1 (Dr. Price Loss Chart). Dr. Price's other four accounts reflect much of the same.

It was perfectly appropriate for Dr. Price to average down his cost basis in CoreWeave stock in this manner. And Dr. Price maintained a long position in CoreWeave stock for the same reason as other Class Period purchasers: he hoped, absent knowledge of the artificial inflation attributable to Defendants' alleged fraud, the share price would go up. The Group's own counsel recently and accurately explained this familiar investment strategy to the court in *AMMO*. There, as here, lead plaintiff movants initiated a long position when they were assigned shares pursuant to sell-to-open puts and subsequently sold covered calls against their long position.

> [Movants] acquired ***705,400*** shares of AMMO stock from the sale of put options…well before the end of the Class Period. Then, instead of selling the large amount of stock assigned to them through the sale of put options, they continued to hold most of that stock well into the Class Period and ultimately held ***166,000*** shares through the end of the Class Period, thereby indicating that they were long on AMMO stock….Accordingly, in the context of the predominantly long position…the sale of call options does not constitute a bet against AMMO stock, as Scarborough contends. Rather, it indicates that, when [movants] sold call options, they were merely investing on the

6

expectation that AMMO's stock price would not rise past a certain threshold, thereby employing a common strategy to hedge against investment losses….

*AMMO*, No. 24-cv-02619, (D. Ariz. Dec. 20, 2024), ECF No. 33, p. 7 (internal citations omitted); *accord AMMO*, 2025 WL 2548618, at *4 (rejecting argument of competing lead plaintiff movants that presumptive movants' "options transactions, ***including selling call options and losses from put option exercises***, render them atypical," because presumptive movants "maintained a predominantly 'long' position…and retained 166,000 shares at the [class] period's end") (emphasis added). The Group's counsel also successfully argued selling covered calls doesn't undermine adequacy or typicality in *Sagall v. Savient Pharms., Inc.*, No. 08-cv-10262, 2009 WL 10868742 (S.D.N.Y. Mar. 12, 2009).

> Schaefer's argument that Koncelik in fact bet *against* the company [by selling covered calls] misreads Koncelik's investments in a way that calls into question her and her attorneys' understanding of the relevant market….The Chicago Board Options Exchange describes such a strategy as "basic" rather than exotic, and as "neutral to moderately bullish," as distinct from the strategy of selling short. Koncelik's rather modest use of this hedging strategy had little effect on the extent of his losses from investing in Savient, and creates no "unique defenses" or plausible objections by defendants to his ability and interest in representing this class.

*Id.* at *1 (internal citations omitted).[2]

---

[2] *See also Chauhan v. Intercept Pharms.*, No. 21-cv-00036, 2021 WL 235890, at *6-7 (S.D.N.Y. Jan. 25, 2021) (rejecting argument that presumptive lead plaintiff movant was inadequate or atypical because he sold covered calls); *J/H Real Est. Inc. v. Abramson*, No. 95-cv-4176, 1996 WL 63712, at *5 (E.D. Pa. Feb. 9, 1996) (same);

7

The Group's collateral argument that Dr. Price is subject to a unique defense because he "cannot be entitled to rely on the *Basic* presumption of reliance premised upon 'fraud-on-the-market'" is likewise incorrect. ECF No. 35 at 29 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 248-89 (1988)). The *Priceline* court explicitly rejected the same argument, holding that "notwithstanding his trading in put options, because [Weiss] wrote put options, his interests are aligned with those of the class and 'the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price,' remains intact." 236 F.R.D. at 100 (quoting *Basic*, 485 U.S. at 248).[3]

Moreover, while the competing movants look for support in *Cook v. Allergan PLC*, No. 18-cv-12089, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019), there the court declined to appoint a movant lead plaintiff because the majority (60%) of his losses were attributable to options. *Id.* at *2. Here, conversely, all but approximately

---

*In re Vesta Ins. Grp., Inc., Sec. Litig.*, No. 98-ar-1407, 1999 WL 34831475, at *11-12 (N.D. Ala. Oct. 25, 1999), *amended in part sub nom. In re Vesta Ins. Grp., Inc. Sec. Litig.*, No. 98-ar-1407, 2008 WL 11381802 (N.D. Ala. July 22, 2008) (same).

[3] *See also Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355-57 (S.D.N.Y. 2011) (holding put option seller was typical because his claims arose from the same alleged fraudulent conduct as other class members' claims); *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1329 (N.D. Ga. 2007) ("[A] put options seller, upon proof of market efficiency in the underlying stock, is generally entitled to a rebuttable presumption of reliance."); *Intercept*, 2021 WL 235890, at *6 ("Absent evidence that [lead plaintiff movant who sold covered calls] did not rely on the integrity of the market price, which has not been offered at this stage, there is no reason to disqualify [movant] as lead plaintiff.").

$(14,783.00)$, or ~*1.65%*, of Dr. Price's $(895,936.71)$ loss is attributable to stock. *See* ECF No. 11-4. Similarly, Mr. Fish points to Dr. Price's counsel's arguments in *Olsen v. Red Cat Holdings, Inc.*, No. 2:25-cv-05427, ECF No. 11, p. 19 (D.N.J. May 23, 2025), as contrary to Dr. Price's position here. That is incorrect. Unlike Dr. Price, the movant in *Red Cat* did not sustain **any** losses on stock and erroneously included "losses for his purchases of Red Cat options he purchased *after* [a] partial corrective disclosure, but which he either sold or which expired *prior* to the [] final corrective disclosure," ECF No. 11, p. 13, in contravention of *Dura Pharms. v. Broudo*, 544 U.S. 336, 342-43 (2005). After unrecoverable losses were excluded, the movant actually "*profited* from his Class Period transactions in Red Cat securities to the tune of **$146,599**." *Id.* at pp. 2-3 (emphasis in original).

In fact, at least one court has credited the breadth of a movant's investments in different types of securities as additional support for appointing him lead plaintiff. *See Isaacs v. Musk*, No. 18-cv-04865, 2018 WL 6182753, at *4 (N.D. Cal. Nov. 27, 2018) (appointing movant who "held interests that cover most of the persons/entities likely to be in the class—*i.e.*, long positions in common stock, long positions in options, and short positions in options").

**B.    Mr. Fish Is Inadequate**

Any presumption in favor of Mr. Fish has been rebutted, as he has demonstrated a pattern of fraudulent misconduct that creates a "potential to distract

9

[that] militates against his appointment." *Gurevitch v. KeyCorp*, No. 1:23-cv-01520, 2023 WL 8890938, at *8 (N.D. Ohio Dec. 26, 2023). Mr. Fish appears to have pled guilty to the fraud-based crimes of Petit Larceny in 2016 and Possession of a Forged Instrument in 2018. *See* ECF No. 35-1 at 25. Mr. Fish's former employer also recently sued him for allegedly misappropriating thousands of dollars from a Bronx co-op for the elderly. *See* ECF No. 34 at 13-15. The Court should be "extremely concerned" that Mr. Fish's prior misconduct "paint[s] a cumulative picture of a candidate prone to [] exercising poor judgment." *In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 331 (D.N.J. 2008).

Mr. Fish also failed to correct or even acknowledge the material discrepancies between his filed certifications, one of which reflected the same error which resulted in his disqualification in *In re Longfin Corp. Sec. Litig.*, No. 1:18-cv-02933, (S.D.N.Y. June 25, 2018), ECF No. 65 at 17:3-16 ; *see also Salem v. Methode Elecs., Inc.*, No. 24-cv-7696, 2025 WL 368955, at *3 (N.D. Ill. Feb. 3, 2025) ("[F]ailure to discover and correct such errors demonstrates that a lead plaintiff will not adequately represent the class….").

Mr. Fish's explanation for filing two conflicting motions only raises further doubts about his adequacy. Mr. Fish states that on March 11, 2026, he "attempted to text message [his] attorney…to confirm everything was in place for the upcoming motion filing" but "inadvertently sent the text message to [his] office line…meaning

10

the text message was never received." ECF No. 32-1 at ¶ 4. But before seeking substitute counsel, Mr. Fish could have attempted a follow-up phone call to his lawyer, emailed, or perhaps even called L&K's main office. Mr. Fish took none of these actions. *See generally* ECF No. 32-1. Instead, less than 24 hours later,[4] Mr. Fish directed his efforts toward retaining substitute counsel. Mr. Fish's inability to effectively communicate with and supervise his counsel raises serious doubts about his adequacy. *See Garbowski v. Tokai Pharms., Inc.*, 302 F. Supp. 3d 441, 453 (D. Mass. 2018) (declining to appoint movant who would not "have been willing or able to discharge [his] duties" of supervising counsel).

Moreover, the purportedly exculpatory authority Mr. Fish cites is readily distinguishable, as the movants in those cases admitted to either mistakenly believing filing multiple motions would increase their chances for appointment or that they were moving for appointment in separate lawsuits.[5] Mr. Fish, on the other

---

[4] Mr. Fish presumably retained KTMC within 24 hours of his March 11 text message, as he executed the KTMC Certification on March 12, 2026. *See* ECF No. 16-4.

[5] *See David v. Brit. Am. Tobacco P.L.C.*, No. 24-cv-517, 2024 WL 4351311, at *6 (E.D.N.Y. Sept. 30, 2024) (movant "erroneously thought that signing up with two law firms would better secure and serve [her] application"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 529 (S.D.N.Y. 2015) (same); *Cullinan v. Cemtrex, Inc.*, 287 F. Supp. 3d 277, 283 n.9 (E.D.N.Y. 2018) (movant believed "he was joining a different lawsuit than the one at issue"); *Subramanian v. Watford*, No. 20-cv-02652 (D. Colo. Nov. 10, 2020) , ECF No. 30-3  (same). The holding in *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 400 n.6 (S.D.N.Y. 2014), is also distinguishable, as there two distinct legal entities filed separate motions. And in *In re Altisource Portfolio Solutions, S.A. Sec. Litig.*, the court did

11

hand, does not characterize his miscommunication as a "mistake," as he cannot in one breath tout his experience as a lead plaintiff and in the next admit to such a "blatant gaffe." *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008).

### C.    The Oros/Xie/Sytina Group is Inadequate

The Third Circuit has instructed courts to avoid appointing groups of investors with no pre-existing relationships and which are "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). Despite the Group's efforts to distort the factual record by disregarding Dr. Price's losses (which are considerably higher than any of its members), and its heavy reliance on a boilerplate Joint Declaration that strongly suggests its lawyers amalgamated these individuals at the eleventh hour, prevailing case law confirms the unrelated, lawyer-driven Group is not an appropriate lead plaintiff candidate.

First, the Group does not fall within the limited exception permitting appointment of unrelated groups where the losses of a single member exceed those of all other competing movants, as was the case in the vast majority of the Group's cited decisions.[6] Although the Group claims "no individual movant claims a larger

---

not reach the issue of the movant filing two motions because those conflicting motions were unopposed. *See* No. 14-cv-81156 (S.D. Fla. Nov. 14, 2014) , ECF No. 18.

[6] *See Aguilar v. Vitamin Shoppe, Inc.*, No. 2:17-cv-6454, 2018 WL 1960444, at *11

investment loss than either Mr. Oros ($547,163) or Mr. Xie ($316,992)," the record plainly contradicts this assertion. ECF No. 35 at 15.

Dr. Price's financial interest greatly exceeds that of any individual member of the Group. This is true even using a variety of different metrics:

| Movant: | Status: | Shares Purchased: | Funds Expended: | Loss: |
|---|---|---|---|---|
| Dr. Price | Individual | 43,800 | $(6,242,196) | $(895,936.71) |
| Oros | Group Member | 8,766.73 | $(1,373,524) | $(547,163) |
| Xie | Group Member | 13,943 | $(1,716,066) | $(316,992) |
| Sytina | Group Member | 2,500 | $(444,540) | $(229,676) |

This latter point also distinguishes the present case from *Lawless v. Aurora Cannabis Inc.* There, the court held the movant group possessed the greatest financial interest and was the presumptive lead plaintiff not only because it "collectively suffered the greatest approximate losses," but also because the group included "the individual[s]

_____

(D.N.J. Apr. 25, 2018) (comparing financial interests of competing individual movant and group member with larger loss); *DeLuca v. Instadose Pharma Corp.*, No. 2:21-cv-675, 2022 WL 3020417, at *3-4 (E.D. Va. July 29, 2022) (same); *In re Mersho*, 6 F.4th 891, 896 (9th Cir. 2021) (same); *Peters v. Jinkosolar Holding Co.*, No. 11-cv-7133, 2012 WL 946875, at *5 (S.D.N.Y. Mar. 19, 2012) (same); *Sabbagh v. Cell Therapeutics, Inc.*, 10-cv-414, 2010 WL 3064427, at *7 (W.D. Wash. Aug. 2, 2010) (same). The Group also cites cases comparing the aggregated financial interests of multiple movant groups, as well as individuals, which are clearly distinguishable as there is no other group movant here. *See In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-cv-4846, 2017 WL 6403513, at *3 (E.D.N.Y. Dec. 15, 2017); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 398-99 (D. Del. 2014); *Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 WL 12985571, at *1 (D. Vt. Apr. 27, 2012); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 159-60 (S.D.N.Y. 2005); *In re Cendant Corp. Litig.*, 264 F.3d 201, 223 (3d Cir. 2001).

with both the largest amount of net shares purchased [] and the largest amount of net funds expended []." 20-cv-13819, 2021 WL 2850451, at *3 (D.N.J. July 8, 2021). That factual predicate is missing here, where Dr. Price purchased more shares and expended more funds than any member of the Group.[7] Accordingly, given Mr. Fish's disqualification, the Group's own cited authority supports Dr. Price's appointment.

Nor has the Group demonstrated a pre-litigation relationship[8] or "cohesiveness and independence from proposed counsel, including 'how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy.'" *Takata v. Riot Blockchain, Inc.*, 18-cv-2293, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018); *see also Chao Sun v. Han*, No. 15-cv-0703, 2015 WL 2364937, at *4 (D.N.J. May 14, 2015) (considering "(i) whether the individuals in question had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status, and (iv) whether the group is too large to

---

[7] Further, while the *Lawless* court describes the group as "three individual investors whose individual injuries are comparable to those of both [individual movants]," that again is not the case here. *Id.* at *5. There, the individual movant's loss was, at most, a little more than $100,000 greater than the group member with the *smallest loss*. *Id.* at *2. Here, by contrast, Dr. Price's loss exceeds Oros's by over $300,000, Xie's by more than $550,000, and Sytina's by more than $650,000.

[8] Unlike here, in *In re Enzymotec Ltd. Sec. Litig.*, the court appointed a group partially comprised of *related* individuals, including a father and son. No. 14-cv-5556, 2015 WL 918535, at *4 (D.N.J. Mar. 3, 2015). Critically, however, in that case the presumptive individual movant's adequacy had been rebutted due to certification errors. *Id.* at *2-3. That threshold finding is likewise absent here.

14

adequately represent the Class.") (citing *Cendant*, 264 F.3d at 266-67). Here, the Group's Joint Declaration provides none of these necessary insights, but instead merely lists biographical summaries, generalized reasons for seeking appointment, and boilerplate assurances regarding the responsibilities of a lead plaintiff. *See* ECF No. 35 at 14. Those statements, without more, do not establish that the Group functions as a cohesive entity.

Furthermore, the Joint Declaration demonstrates that the Group members did not even communicate with each other prior to filing their motion. *See* ECF No. 22-3 at ¶ 2-5 (stating that while the Group members discussed the case with their attorneys, they are only "aware of each other"). Even courts that have taken a more permissive view on unrelated groups have nonetheless required evidence of "***informed communication*** among the members as to forming a group [that] need only predate the motions for appointment as lead plaintiff." *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 416 (E.D. Pa. 2019); *see also Takata*, 2018 WL 5801379, at *5 (stating the members "'were aware of each other' prior to the motion" did "not allay the [Court's] concerns about appointing a loose, attorney-driven group of investors"). The Group's arguments in support of their appointment as lead plaintiff are without merit.

## III.    CONCLUSION

Dr. Price respectfully requests that his motion be granted.

DATED: March 30, 2026                    Respectfully submitted,

                                         **ROBINSON MILLER LLC**

                                         */s/ Michael J. Gesualdo*
                                         Michael J. Gesualdo
                                         Ironside Newark
                                         110 Edison Place, Suite 302
                                         Newark, New Jersey 07102
                                         Telephone: (973) 690-5400
                                         Email: mgesualdo@rwmlegal.com

                                         *Local Counsel for Lead Plaintiff Movant*
                                         *Richard A. Price, M.D.*

                                         **KAHN SWICK & FOTI, LLC**
                                         Kim E. Miller (*PHV to be submitted*)
                                         250 Park Avenue, 7th Floor
                                         New York, NY 10177
                                         Telephone: (212) 696-3730
                                         Fax: (504) 455-1498
                                         Email: kim.miller@ksfcounsel.com

                                         *Counsel for Lead Plaintiff Movant Richard*
                                         *A. Price, M.D. and Proposed Lead Counsel*
                                         *for the Class*

## CERTIFICATE OF SERVICE

On March 30, 2026, the foregoing document was filed through the Court's

ECF system and will be sent electronically to the registered participants as identified

on the Notice of Electronic Filing (NEF).

DATED: March 30, 2026                    */s/ Michael J. Gesualdo*
                                         Michael J. Gesualdo

16