**LEVI & KORSINSKY, LLP**
Adam M. Apton
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Frank Fish and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND MASAITIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COREWEAVE, INC., MICHAEL INTRATOR, NITIN AGRAWAL, and BRANNIN MCBEE,<br><br>Defendants. | Case No. 2:26-cv-00355-JKS-LDW<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FRANK FISH'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>**MOTION DATE: April 6, 2026** |

# **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ........................................................................1

II.  ARGUMENT.....................................................................................................4

    A. Mr. Fish's Motion Does Not Contain Any Material Errors. ...........................4

    B. Unrelated Legal Issues and Work Disputes are Insufficient to Rebut Mr. Fish's Presumption of Lead Plaintiff..............................................................10

III.  CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batter v. Hecla Mining Co.*,
No. 19-cv-4883 (ALC), 2020 U.S. Dist. LEXIS 51665 (S.D.N.Y. Mar. 25, 2020) ...............................................................................................................14

*Bodri v. GoPro, Inc.*,
No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559 (N.D. Cal. Apr. 28, 2016) ...............................................................................................................13

*In re Cendant Corp. Litigation*,
264 F.3d 201 (3d Cir. 2001) ....................................................................... *passim*

*Chupa v. Armstrong Flooring, Inc.*,
No. 19-cv-09840-CAS, 2020 U.S. Dist. LEXIS 36506 (C.D. Cal. Mar. 3, 2020) ...............................................................................................................12

*David v. British Am. Tobacco P.L.C.*,
No. 24-CV-517 (AMD)(MMH), 2024 U.S. Dist. LEXIS 181441 (E.D.N.Y. Sep. 30, 2024) .......................................................................................................4, 6

*Garbowski v. Tokai Pharmaceuticals, Inc.*,
302 F. Supp. 3d 441 (D. Mass. 2018) ....................................................................9

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523, 536-37 (S.D.N.Y. 2015) ......................................................5

*Kurt v. Ou*,
No. 25-cv-05017-RER-CHK (E.D.N.Y.) .............................................................5

*Labelle v. Future FinTech Grp., Inc.*,
No. 24-247 (JXN) (JSA), 2024 U.S. Dist. LEXIS 172696 (D.N.J. Sep. 24, 2024) ......................................................................................... 2, 10, 13

*Li Hong Cheng v. Can. Goose Holdings Inc.*,
No. 19-CV-8204 (VSB), 2019 U.S. Dist. LEXIS 209946 (S.D.N.Y. Dec. 5, 2019) .............................................................................................................9, 10

*In re Longfin Corp. Securities Class Action Litigation*,
No. 1:18-cv-02933-DLC (S.D.N.Y.) ...............................................................7, 8

iii

*Maeshiro v. Yatsen Holding Ltd.*,
No. 22-CV-8165 (JPC) (BCM), 2023 U.S. Dist. LEXIS 126190 (S.D.N.Y. July 21, 2023)......................................................................................................5

*Malriat v. Quantumscape Corp.*,
No. 3:21-cv-00058-WHO, 2021 U.S. Dist. LEXIS 76914 (N.D. Cal. Apr. 20, 2021) ...............................................................................................................3, 8

*Malriat v. QuantumScape Corp.*,
No. 3:21-cv-00058-WHO, 2022 U.S. Dist. LEXIS 232497 (N.D. Cal. Dec. 19, 2022) ................................................................................................................3

*Montoya v. Herley Indus.*,
No. 06-2596, 2006 U.S. Dist. LEXIS 83343 (E.D. Pa. Nov. 14, 2006).............13

*Nayani v. Lifestance Health Grp., Inc.*,
641 F. Supp. 3d 57, 63 (S.D.N.Y. 2022) .............................................................8

*Plaut v. The Goldman Sachs Grp., Inc.*,
No. 18-CV-12084 (VSB), 2019 U.S. Dist. LEXIS 160255 (S.D.N.Y. Sep. 19, 2019) ...........................................................................................................9, 10

*In re QuantumScape Securities Class Action Litigation*,
No. 3:21-cv-00058-WHO (N.D. Cal.)........................................................ *passim*

*Reitan v. China Mobile Games & Entm't Grp., Ltd,*
68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014) ...........................................................5

*Scuderi v. Mammoth Energy Servs. Inc.*,
No. 19-cv-00522-SLP, 2019 U.S. Dist. LEXIS 156725 (W.D. Ok. Sept. 13, 2019) .................................................................................................................12

*Shelby Twp. Police & Fire Ret. Sys. v. Celsius Holdings, Inc.*,
No. 24-CV-81472, 2025 LX 133816 (S.D. Fla. Mar. 3, 2025) ..........................14

*Siegel v. The Boston Beer Co.*,
No. 21-cv-07693 (VSB), 2021 U.S. Dist. LEXIS 239143 (S.D.N.Y. Dec. 14, 2021) .................................................................................................................5

*Skeels v. Piedmont Lithium Inc.*,
No. 21-CV-4161 (LDH) (PK), 2022 U.S. Dist. LEXIS 30705 (E.D.N.Y. Feb. 4, 2022) .................................................................................................................14

iv

*Sneed v. Acelrx Pharms.*,
   No. 21-cv-04353-BLF, 2021 U.S. Dist. LEXIS 240844 (N.D. Cal. Dec. 16, 2021) ..........................................................................................................12

*In re Solar City Corporation Securities Litigation*,
   No. 16-cv-04686-LHK, (N.D. Cal.) ...................................................................7

*In re Spero Therapeutics, Inc. Sec. Litig.*,
   No. 22-CV-3125 (LDH) (RLM), 2022 U.S. Dist. LEXIS 168778 (E.D.N.Y. Sep. 19, 2022) .................................................................................................7

*Villare v. Abiomed*,
   No. 19-cv-07319 (ER), 2020 U.S. Dist. LEXIS 114684 (S.D.N.Y. June 29, 2020) ..........................................................................................................14

**Statutes**

15 U.S.C. § 78u-4.............................................................................................7. 15

## I.    PRELIMINARY STATEMENT

Movant Frank Fish should be appointed Lead Plaintiff. He possesses the largest financial interest in the action with over $6 million in recoverable losses and is the only movant with a demonstrated track record of success serving as the certified class representative in *In re QuantumScape Securities Class Action Litigation* where he and his current counsel at Levi & Korsinsky secured a $47.5 million settlement. These facts qualify Mr. Fish as the "presumptive" lead plaintiff, thereby requiring his appointment unless a competing movant "can prove that [he] will not do a fair and adequate job." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262-68 (3d Cir. 2001) (internal quotations and alterations omitted). Despite the arguments raised in opposition, nothing rises to the level of "proof" necessary to rebut Mr. Fish's status as the "presumptive" lead plaintiff.

The two remaining competing movants—Richard Price and the CoreWeave Investor Group—raise a handful of arguments against Mr. Fish with the first being focused on his filing of two motions. But as already explained, Mr. Fish filed the second motion to protect his rights and then promptly withdrew it once he realized it was unnecessary. Mr. Fish's actions in this regard should not be mistaken for confusion about the case or litigation process, but instead be seen as evidence of his commitment to serving as the Lead Plaintiff and doing whatever needs to be done to ensure this case is litigated to its fullest potential.

1

Their second argument against Mr. Fish highlights supposed "discrepancies" between the two motions he filed, which they say cut against his ability to supervise the litigation. These "discrepancies" are inconsequential trivial differences between the wording in the two motions. For example, there is no meaningful difference between Mr. Fish having "over 25 years" of investing experience versus having been "investing in securities for more than 35 years." In addition, while Mr. Fish's transactions were presented differently in the two motions because certain trades were split when filled and routed by his broker, everyone acknowledges that Mr. Fish's certifications were complete and that both motions correctly calculated Mr. Fish's financial interest. These "discrepancies" are nothing like the material errors considered by courts when disqualifying lead plaintiff movants in the past.

Finally, Dr. Price and the CoreWeave Investor Group ask the Court to deny Mr. Fish's motion because of two misdemeanors from nearly 10 years ago and an unrelated civil lawsuit between him and a former employer. Past bad acts are rarely serious enough to disqualify an otherwise adequate lead plaintiff candidate; instead, a competing movant must offer "proof" of an ongoing criminal investigation or a conviction that "demonstrates dishonesty." *Labelle v. Future FinTech Grp., Inc.*, No. 24-247 (JXN) (JSA), 2024 U.S. Dist. LEXIS 172696, at *16 (D.N.J. Sep. 24, 2024). Had these incidents from Mr. Fish's past had any importance at all, they would have played at least some role in Mr. Fish's motion for lead plaintiff and/or motion for

2

class certification in *QuantumScape*. They did not though and despite fierce opposition to both motions, the court sided with Mr. Fish both times.[1]

The PSLRA's lead plaintiff presumption is a strong one. *Cendant*, 264 F.3d at 268 ("once the presumption is triggered, the question is not whether another movant might do a better job . . . instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job") (internal quotations and alterations omitted). Dr. Price and the CoreWeave Investor Group do not meet this standard. They offer only speculation about Mr. Fish's credibility when that speculation is vastly outweighed by Mr. Fish's uncontested track record as a tried-and-true class representative who has the benefit of being the only movant who can truthfully say he has what it takes to successfully represent a class of shareholders. *QuantumScape* was a contentious litigation that required significant time and effort from Mr. Fish. Over the course of three and a half years, he reviewed hundreds of pages of case related materials, responded to dozens of interrogatories, sat for a full six-hour deposition, and attended at least two full-day mediation sessions all in addition to the day-to-day communications that occurred with his attorneys about various case developments and litigation strategy. He is by far one

---

[1] *See Malriat v. Quantumscape Corp.*, No. 3:21-cv-00058-WHO, 2021 U.S. Dist. LEXIS 76914 (N.D. Cal. Apr. 20, 2021) (appointing Mr. Fish lead plaintiff); *Malriat v. QuantumScape Corp.*, No. 3:21-cv-00058-WHO, 2022 U.S. Dist. LEXIS 232497 (N.D. Cal. Dec. 19, 2022) (certifying Mr. Fish class representative).

of the most qualified shareholders to serve as Lead Plaintiff and perfectly fulfills the "PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel." *See Cendant*, 264 F.3d at 267.

## II.    ARGUMENT

### A.    Mr. Fish's Motion Does Not Contain Any Material Errors.

Mr. Fish explained why he filed two motions. *See* Supplemental Declaration of Frank Fish, Dkt. No. 32-1. He sent a text message to counsel at the wrong number. When he did not receive a response, Mr. Fish asked the Kessler Topaz firm to file a secondary motion to protect his interests in the action. Mr. Fish promptly withdrew that second motion once he realized it was unnecessary. *See id*. Mr. Fish's actions evidence his commitment to the case, which counsel for the competing movants should recognize given their past representations in similar matters. Indeed, the CoreWeave Investor Group's counsel at Pomerantz LLP has dealt with this exact issue on numerous occasions recently. In *David v. British Am. Tobacco P.L.C.*, No. 24-CV-517 (AMD)(MMH), 2024 U.S. Dist. LEXIS 181441 (E.D.N.Y. Sep. 30, 2024), Pomerantz's client, Jean Lee, filed two lead plaintiff motions with two different firms with sworn certifications containing different loss amounts. Notwithstanding, counsel argued and the court accepted that "[r]etaining two separate law firms to file separate motions for the same plaintiff is not a sufficient

4

basis for disqualification." *Id*. at *15-16 (citing *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536-37 (S.D.N.Y. 2015)).[2]

The supposed "discrepancies" between Mr. Fish's two motions are also insufficient to disqualify him. Disqualifying errors only exist when they strike at the heart of the motion. "Courts 'routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.'" *Maeshiro v. Yatsen Holding Ltd.*, No. 22-CV-8165 (JPC) (BCM), 2023 U.S. Dist. LEXIS 126190, at *22 (S.D.N.Y. July 21, 2023) (collecting cases). "The goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes—rather it was to promote a client-driven rather than lawyer-driven process." *Reitan v. China Mobile Games & Entm't Grp., Ltd*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014).

Counsel for the competing movants once again are familiar with this aspect of the law. Both Dr. Price's counsel and the CoreWeave Investor Group's counsel have successfully argued against "mistakes" in their motion papers. For example, in *Siegel v. The Boston Beer Co.*, No. 21-cv-07693 (VSB), 2021 U.S. Dist. LEXIS 239143 (S.D.N.Y. Dec. 14, 2021), Dr. Price's counsel submitted a certification

---

[2] Pomerantz also defended their client, Jan Lindberg, who filed duplicative motions more recently in *Kurt v. Ou*, No. 25-cv-05017-RER-CHK (E.D.N.Y.). *See* Reply Brief, Dkt. No. 35 (arguing that duplicative motions was "strategic miscue"). Their motion for lead plaintiff in that case is *sub judice*.

containing "incorrect dates for four transactions" but successfully argued that the dates were off by one day, were the result of a "typographical" error, and did not affect the client's loss calculation. *Id*. at \*22-23. Similarly, the CoreWeave Investor Group's counsel made a mistake in *David* but successfully argued that the discrepancies in loss calculations between the client's duplicative motions were "minor or inadvertent" and did not "strike at the heart of Rule 23's adequacy requirement." *David*, 2024 U.S. Dist. LEXIS 181441, at \*16-17.

Meanwhile, by comparison, Mr. Fish's supposed "discrepancies" are far less significant. Whether Mr. Fish has more than 25 years of investing experience or more than 35 years is entirely immaterial. *See* Dkt. No. 35 at 19. In either event, the point is that Mr. Fish has decades of investing experience and is well suited to lead this litigation. Likewise, while Mr. Fish's transaction history was presented differently, the difference relates to how counsel transcribed the transactions based on how they were executed and/or filled. The different presentations did ***not*** affect the overall loss calculation or otherwise impact any other aspect of the analysis. *See*, *e.g.*, Dkt. No. 34 at 11 (Dr. Price admitting that "discrepancies did not result in different claimed total loss figures").

The other "discrepancies" identified by the competing movants are equally meritless. While the Kessler Topaz firm submitted a certification that did not include Mr. Fish's past securities litigation experience, the certification submitted by Levi

6

& Korsinsky most certainly did. *Compare* Dkt. No. 16-4 (Kessler Topaz certification) *with* Dkt. No. 14-4 (Levi & Korsinsky certification). Regardless, Kessler Topaz submitted a declaration from Mr. Fish that identified his role in the *QuantumScape* litigation (which was all that needed to be identified pursuant to 15 U.S.C. 78u-4(a)(2)(A)(v)). *See* Dkt. No. 16-6 at ¶5. In addition, Dr. Price's argument concerning LC Lemle's operating history (*see* Dkt. No. 34 at 9) fails to account for its operations under former iterations when controlled by its current owner's now-deceased parent. These supposed "discrepancies" are inconsequential and do not rise to the level of severity needed to disqualify Mr. Fish. *See*, *e.g.*, *In re Spero Therapeutics, Inc. Sec. Litig.*, No. 22-CV-3125 (LDH) (RLM), 2022 U.S. Dist. LEXIS 168778, at *22 (E.D.N.Y. Sep. 19, 2022) ("counsel's mistakes are relatively minor. Indeed, these are not the kind of errors that courts in this Circuit typically view as demonstrating a movant's inadequacy to serve as lead plaintiff").[3]

---

[3] The competing movants also offer speculative arguments based on the transcript order in *In re Longfin Corp. Sec. Litig.*, 1:18-cv-02933-DLC (S.D.N.Y.). In that case, the court denied Mr. Fish's motion for lead plaintiff. The transcript order suggests the decision was driven at least in part by counsel's failure in that case to "have in place systems that would have prevented" the omission of *Solar City* on his certification. *See* Dkt. No. 35-1 at 21. The scenario that gave rise to that decision does not exist here. As stated previously, Mr. Fish's certification filed by Levi & Korsinsky correctly listed *QuantumScape* and, even then, the one filed by Kessler Topaz was accompanied by a declaration that identified the *QuantumScape* action. Further, Levi & Korsinsky (not Kessler Topaz) is seeking to be appointed Lead Counsel, thereby rendering Kessler Topaz's alleged mistake entirely irrelevant. *See*

The competing movants misplace reliance on several cases but none changes the outcome on this issue. In *Nayani v. Lifestance Health Grp., Inc.*, 641 F. Supp. 3d 57, 63 (S.D.N.Y. 2022), the court had "significant doubts that Ms. Jordan will manage and monitor counsel in the way that Congress envisioned when it enacted the PSLRA." These doubts were based on a litany of findings, including that she had no experience managing attorneys in litigation, she did not negotiate any attorneys' fee, had no input in the selection of co-counsel, her name was misspelled on her certification and throughout the moving papers, and had no substantive answer to explain why she "elected to be represented by two law firms." *Id*. at 63-64. Nothing similar exists in the case at bar; to the contrary, Mr. Fish has demonstrated his interest in pursuing this case and has the experience to do so based on his service as class representative in *QuantumScape*. Indeed, Mr. Fish's service in *QuantumScape* was exemplary. He spent over three and a half years overseeing the litigation through initial motion practice at the pleading stage, participating in discovery, negotiating a settlement, and ultimately obtaining final approval of the $47.5 million recovery that brought the action to a close. *See* Declaration of Frank Fish, *In re QuantumScape Sec. Litig.*, No. 3:21-cv-00058-WHO (N.D. Cal.) (Dkt. No. 216-8), ¶¶6-12 (describing day-to-day work as lead plaintiff and class representative).

---

*Malriat v. Quantumscape Corp.*, 2021 U.S. Dist. LEXIS 76914, at *19 (rejecting argument against Mr. Fish based on *Longfin* decision).

*Garbowski v. Tokai Pharmaceuticals, Inc.*, 302 F. Supp. 3d 441 (D. Mass. 2018), is also distinguishable. In that case, one of the movants, Steven Maxon, "did not recall any conversation with [counsel] or what was discussed" which led the court to question "Maxon's ability to supervise this litigation." *Id*. at 453. Unlike here where Mr. Fish made a deliberate decision to retain Levi & Korsinsky to represent him, Mr. Maxon in *Garbowski* selected Goldberg P.C. who then apparently referred him to another firm without his knowledge or approval. *Id*. at 454. In addition, Mr. Maxon's certification did not "accurately and completely reflect the transactions that [he] had originally included in his signed Certification." *Id*. at 455. Mr. Maxon also "did not know what a complaint was and had not read anything except a notice on a website before seeking to become lead plaintiff." *Id*. at 443-44. Ultimately, the court held that "Maxon did not understand the obligations of a lead plaintiff, and would not have been willing and able to satisfy them." *Id*. at 455-56. Mr. Fish is not at all like Mr. Maxon in *Garbowski*. Far from it, he has been focused on pursuing this case as its lead plaintiff from the moment he found out about it.[4]

---

[4] The competing movants also cite to *Plaut v. The Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 U.S. Dist. LEXIS 160255 (S.D.N.Y. Sep. 19, 2019), and *Li Hong Cheng v. Can. Goose Holdings Inc.,* No. 19-CV-8204 (VSB), 2019 U.S. Dist. LEXIS 209946 (S.D.N.Y. Dec. 5, 2019). But these cases are inapposite for the same reasons as the ones discussed above. In *Plaut*, a lead plaintiff movant submitted

**B.     Unrelated Legal Issues and Work Disputes are Insufficient to Rebut Mr. Fish's Presumption of Lead Plaintiff.**

The competing movants raise arguments against Mr. Fish based on two misdemeanors from nearly a decade ago and an ongoing civil dispute with a former employer. Their arguments fail, however, because the mere fact that these misdemeanors occurred or that a civil lawsuit exists does ***not*** rise to the level "proof" necessary to disqualify Mr. Fish. There are no "active criminal investigations" against Mr. Fish and while he has two misdemeanors on his record from 2016 and 2018, they pale in comparison to the sort of crimes needed to disqualify him. *See Labelle*, 2024 U.S. Dist. LEXIS 172696, at *14-18 (collecting cases).

Mr. Fish's accompanying supplemental declaration provides additional context around the misdemeanors. First, it was his belief that the two misdemeanors were sealed records. As explained, Mr. Fish has undergone numerous criminal background checks over the past decade with none ever identifying the existence of these records. Moreover, having moved for lead plaintiff on different occasions in

---

a certification that failed to list class period transactions while at the same time making "no attempt to explain the circumstances surrounding the error." The movant's application was also clouded by accusations of gamesmanship arising from the untimely filing of an additional complaint seemingly for the purpose of inflating its recoverable losses. *Plaut*, 2019 U.S. Dist. LEXIS 160255, at *13-15. *Cheng* stated in a footnote that a movant's incomplete certification could be disqualifying but the concern was mooted by the fact that another movant had a larger financial interest and was already established as the unrebutted presumptive lead plaintiff. *See Cheng*, 2019 U.S. Dist. LEXIS 209946, at *17 n.7.

10

different cases and even more recently undergoing a thorough deposition in *QuantumScape* for class certification, the misdemeanors were never raised as an issue. *See* Second Supplemental Declaration of Frank Fish, ¶7.

But for the adversarial nature of the present lead plaintiff proceeding, Mr. Fish's misdemeanors likely would have remained in the past for good. However, given counsel's arguments, Mr. Fish volunteers additional information about the incidents in hopes of eliminating any concerns the Court might have with his application. Both incidents arose from his role as a property manager. In 2016 and 2018, Mr. Fish endorsed a check (signed the back) to deposit funds from a third-party. The checks were for relatively small amounts and deposited in accounts belonging to other people and/or companies (not Mr. Fish). Mr. Fish faced misdemeanor charges though because he was not authorized to deposit the checks on behalf of the receiving party. Importantly, neither check that Mr. Fish endorsed would have resulted in Mr. Fish receiving any money. *See id*. at ¶¶8-10.

Mr. Fish's misdemeanors have not interfered with his prior class representative roles, and will not interfere with the one at hand if allowed. In *QuantumScape*, Mr. Fish faithfully served first as Lead Plaintiff and then later as Class Representative. He reviewed pleadings and motions, responded to discovery requests (including 95 interrogatories across three sets of demands), sat for a six-hour deposition, and attended full-day mediation sessions. *See* Declaration of Frank

11

Fish, *In re QuantumScape Sec. Litig.*, No. 3:21-cv-00058-WHO (N.D. Cal.) (Dkt. No. 216-8) at ¶¶6-12. While counsel for the competing movants claim that Mr. Fish's past will prevent him from serving as Lead Plaintiff in this action, they have no "proof" of that and cannot explain why his past did not interfere with his obligations previously in *QuantumScape*.

The case law on this point also supports Mr. Fish. In short, courts have only disqualified movants from serving as lead plaintiffs when their past actions are so severe that their credibility and integrity are effectively destroyed. *See*, *e.g.*, *Sneed v. Acelrx Pharms.*, No. 21-cv-04353-BLF, 2021 U.S. Dist. LEXIS 240844, at *9-10 (N.D. Cal. Dec. 16, 2021) (proposed lead plaintiff deemed inadequate and presumption rebutted when he was indicted and convicted for embezzling over $900,000 from a former employer). However, absent shocking facts of that nature, courts typically allow shareholders with past indiscretions to serve as lead plaintiffs. *See*, *e.g.*, *Chupa v. Armstrong Flooring, Inc.*, No. 19-cv-09840-CAS, 2020 U.S. Dist. LEXIS 36506, at *12-13 (C.D. Cal. Mar. 3, 2020) (armed bank robbery, accompanied by 97 months in federal prison, insufficient to rebut presumption that lead plaintiff was adequate); *Scuderi v. Mammoth Energy Servs. Inc.*, No. 19-cv-00522-SLP, 2019 U.S. Dist. LEXIS 156725, at *10-13 (W.D. Ok. Sept. 13, 2019) (felony conviction for distribution of controlled substance and misdemeanor for tampering with public records insufficient to rebut presumption).

Even when the charges against the lead plaintiff movant arguably relate to honesty, they still have to be recent and relevant before the movant is disqualified. *See Labelle*, 2024 U.S. Dist. LEXIS 172696, at \*18 (despite being denied admission to the Florida bar, movant was appointed lead plaintiff because the denial "could not have had any bearing on the allegations in this case or serve as a unique defense to the claims of the class, as the Florida Bar proceedings are twelve years old, thus having concluded long before the class period in this case"); *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559, at \*18 (N.D. Cal. Apr. 28, 2016) (movant appointed lead plaintiff despite pleading guilty to making false statements on export declaration in violation of federal law because "offense in question occurred 14 years ago"); *Montoya v. Herley Indus.*, No. 06-2596, 2006 U.S. Dist. LEXIS 83343, at \*7 (E.D. Pa. Nov. 14, 2006) (appointing lead plaintiff who settled fraud charges with the SEC). Mr. Fish's misdemeanors date back 10 years and do not involve any attempt to break the law for his own financial gain. Based on the law concerning this issue, Mr. Fish should not be disqualified.[5]

---

[5] Mr. Fish's lawsuit with Maxwell-Kates is even more inconsequential. Dr. Price's counsel pieces together a completely unverified narrative in which Mr. Fish supposedly misappropriated funds from his former employer. There is absolutely no "proof" of that. Even the lawsuit referenced by Dr. Price is missing the information he ascribes to it. Indeed, Maxwell-Kates filed a "Summons with Notice" almost a year ago and, to date, has still not filed a "Complaint." *See* Second Supplemental Declaration of Frank Fish at ¶11. Consequently, the allegations pieced together by

The cases relied upon by the competing movants illustrate Mr. Fish's point. For example, in *Villare v. Abiomed*, No. 19-cv-07319 (ER), 2020 U.S. Dist. LEXIS 114684 (S.D.N.Y. June 29, 2020), the movant "was arrested and charged with health care claims fraud in the second degree and Medicaid fraud in the third degree, in connection with the takedown of a major criminal narcotics network in New Jersey that was responsible for the black market distribution of thousands of prescription pain pills." *Id*. at *17. Similarly, in *Batter v. Hecla Mining Co.*, No. 19-cv-4883 (ALC), 2020 U.S. Dist. LEXIS 51665, at *15-20 (S.D.N.Y. Mar. 25, 2020), a movant was disqualified after the court considered six different events from his past, including violating insider trader policies, a gambling debt, and "RICO violations and violations of the Exchange Act." *Id*. at *15-20. The severity of these crimes goes far beyond what happened with Mr. Fish nearly 10 years ago.

Just because the competing movants say Mr. Fish's past will somehow materialize into a "unique defense" does not make it so. A "unique defense" only

---

Dr. Price's counsel from various internet websites and stories is woefully incomplete and incapable of disqualifying Mr. Fish. *See, e.g.*, *Shelby Twp. Police & Fire Ret. Sys. v. Celsius Holdings, Inc.*, No. 24-CV-81472, 2025 U.S. Dist. LEXIS 37307, at *11 (S.D. Fla. Mar. 3, 2025) ("The Court does not agree that Mr. Zarabi's involvement in a wholly unrelated civil lawsuit—in which Mr. Zarabi has not yet been found liable on any counts—implicates the Zarabi Trust's ability to serve as a fiduciary to its fellow class members."); *Skeels v. Piedmont Lithium Inc.*, No. 21-CV-4161 (LDH) (PK), 2022 U.S. Dist. LEXIS 30705, at *19-20 (E.D.N.Y. Feb. 4, 2022) (unsubstantiated allegations insufficient to rebut presumption).

disqualifies a movant when "proof" shows that he will "not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Neither of the competing movants has articulated (let alone supported with proof) how any dispute by/with Mr. Fish's past would turn into a "unique defense" capable of hijacking the focus of the litigation. They may claim that the "relevance" of these issues is "obvious" but, again, fail to explain why if that were true they never—not once—turned into issues in the *QuantumScape* litigation. In truth, the facts show that Mr. Fish has been, and will be, an exceptionally qualified lead plaintiff. He excelled as the Lead Plaintiff in *QuantumScape* and will do the same here if allowed.

## III.    CONCLUSION

While the competing movants attempt to disqualify Mr. Fish, they have their own issues preventing them from being appointed. Dr. Price is an atypical option trader, while the CoreWeave Investor Group is an improper lawyer-driven group, s*ee Cendant*, 264 F.3d at 266. The issues faced by Dr. Price and the CoreWeave Investor Group further the conclusion that Mr. Fish is the correct choice for Lead Plaintiff, as he most closely achieves the goals of the PSLRA. *See Cendant*, 264 F.3d at 267 (noting "the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel"). Consequently, Mr. Fish respectfully requests that his motion be granted in its entirety.

Dated: March 30, 2026

Respectfully submitted,

**LEVI & KORSINSKY, LLP**


*/s/ Adam M. Apton*
Adam M. Apton
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Frank Fish and [Proposed] Lead Counsel for the Class*

16

## CERTIFICATE OF SERVICE

I, Adam M. Apton, hereby certify that on March 30, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/Adam M. Apton*
Adam M. Apton

17